## ZEIDEL v. CONNECTICUT GENERAL LIFE INS. CO.

### No. 5858.

District Court, W. D. Pennsylvania.

June 11, 1929.

Charles Margiotti and S. C. Puglise, both of Punxsutawney, Pa., and S. V. Albo, of Pittsburgh, Pa., for plaintiff.

Reed, Smith, Shaw & McClay, P. K. Motheral, and Carl Glock, all of Pittsburgh, Pa., for defendant.

McVICAR, District Judge.

This is an action on a life insurance policy by the beneficiary. The jury returned a verdict for the full amount of the plaintiff's claim. The case is now before us on defendant's motion for a new trial.

Plaintiff, at the trial, offered in evidence the policy of insurance, dated December 1, 1926, in the sum of $5,000; evidence of the payment of the premium thereon at the date of issue, and one year subsequent thereto; the death of the insured; proof of death to the defendant; and the refusal of the defendant to pay the insurance—this made out a prima facie case in favor of the plaintiff. Defendant then offered in evidence (which was uncontradicted) that the insured, in his application, which is a part of the policy, represented that he had never been on a restricted diet; that he had never had jaundice; that he had no medical advice within the period of five years preceding the date of the policy excepting treatment for a cold; that these representations were false; that they were known by the insured to be false; and that defendant, relying thereon, issued the policy upon which this action was brought. If the case had ended here, defendant would have been entitled to binding instructions. Mutual Life Insurance Co. v. Hilton-Green, 241 U. S. 613, 36 S. Ct. 676, 60 L. Ed. 1202; New York Life Insurance Co. v. Wertheimer (D. C.) 272 F. 730; Lutz v. Metropolitan Life Insurance Co., 186 Pa. 527, 40 A. 1104; Murphy v. Prudential Insurance Co., 205 Pa. 444, 55 A. 19; McEntee v. New York Life Insurance Co., 79 Pa. Super. Ct. 457; Martin v. Prudential Life Insurance Co., 83 Pa. Super. Ct. 509; March v. Metropolitan Life Insurance Co., 186 Pa. 629, 40 A. 1100, 65 Am. St. Rep. 887.

Plaintiff offered evidence in rebuttal that the agent of defendant, who solicited the insurance, knew that the aforesaid representations were false; that it was his duty to communicate the same to his principal, and with this knowledge the policy was issued and the premiums paid. Defendant offered evidence in sur rebuttal to the effect that the agent did not know the representations were false. The court submitted the question to the jury, whether the falsity of the said representations were known to defendant's agent before the issuance of the policy, and the receipt of the premiums paid thereon, and instructed the jury that, if they found this issue in favor of the plaintiff, it would be their duty to render a verdict in her favor, providing the circumstances were not such as would reasonably lead the insured to believe that the agent would not communicate his knowledge to the defendant. Defendant, in his motion for a new trial, alleges that the court erred in refusing its point for binding in-

structions, except as to the premiums paid, with interest.

Was there an equitable estoppel in favor of the plaintiff? The answer to this question depends upon whether the agent's knowledge was chargeable to his principal. In 21 Ruling Case Law, 843, it is stated: "While the knowledge of an agent is ordinarily to be imputed to the principal, it would appear now to be well established that there is an exception to the construction or imputation of notice from the agent to the principal in case of such conduct by the agent as raises a clear presumption that he would not communicate the fact in controversy, as where the communication of such a fact would necessarily prevent the consummation of a fraudulent scheme which the agent was engaged in perpetrating, or when the person claiming the benefit of the knowledge or notice or those whom he represents collude with the agent to cheat or defraud the principal."

In Gunster v. Scranton, etc., Co., 181 Pa. 327, 37 A. 550, 59 Am. St. Rep. 650, the rule is stated in the syllabus as follows: "An exception to the general rule that notice to the agent is notice to the principal arises in case of such conduct by the agent as raises a clear presumption that he would not communicate the fact in controversy, as where the agent acts for himself in his own interest and adversely to that of the principal."

In United Security Life Insurance & Trust Co. v. Central National Bank, 185 Pa. 586, 40 A. 97, 98, Justice Mitchell of the Supreme Court, said: "The rule * * * is founded on the duty of the agent to communicate all material information to his principal, and the presumption that he has done so; but no agent who is acting in his own antagonistic interest, or has committed a fraud by which his principal is affected, can be presumed to have disclosed such fraud. It would be contrary to all experience of human nature, on which presumptions are founded."

The latter case is cited, with approval, in National Union Fire Insurance Co. v. Mellon National Bank, 276 Pa. 212, 119 A. 910.

In the case of Mutual Life Insurance Co. v. Hilton-Green, 241 U. S. 613, 36 S. Ct. 676, 680, 60 L. Ed. 1202, supra, the Supreme Court, in its opinion, said: "The general rule which imputes an agent's knowledge to the principal is well established. The underlying reason for it is that an innocent third party may properly presume the agent will perform his duty and report all facts which affect the principal's interest. But this general rule does not apply when the third party knows there is no foundation for the ordinary presumption,—when he is acquainted with circumstances plainly indicating that the agent will not advise his principal. The rule is intended to protect those who exercise good faith, and not as a shield for unfair dealing."

In the case of Clifton v. Tomb, 21 F. (2d) 893, 901 (Circuit Court of Appeals, Fourth Circuit), the court said: "The general rule that the knowledge of the agent is imputed to the principal rests upon the presumption that the agent will disclose what it is his principal's business to know and the agent's duty to impart. But, where the agent contracts with his principal and has a personal interest in the matter antagonistic to the interest of the principal, the rule does not apply, because in such a case there is no reason to presume that the agent will impart information which it is to his interest to suppress."

In Keeton v. Jefferson Standard Life Insurance Co., 5 F. (2d) 183, 187 (Circuit Court of Appeals, Fourth Circuit), the court said: "These positions respecting answers to questions made by the agent of the company, instead of the assured, and the imputation of knowledge on the part of the company because of information to its representative, are each predicated upon the transaction having been entered into in good faith, and that the same is otherwise free from the taint of fraud and imposition on the part of the assured; and when it once appears that such fraudulent conditions exist respecting material matters entering into the making of the contract, they become immaterial, and a contract so secured must fall."

See, also, Bankers' Life Co. v. Dixon (D. C.) 24 F. (2d) 241; Stiegler v. Eureka Life Insurance Co., 146 Md. 629, 127 A. 397; Loving v. Mutual Life Insurance Co. of New York, 140 Md. 173, 117 A. 323; Judd v. Lubbock Mutual Aid Association (Tex. Civ. App.) 269 S. W. 284; Kane v. Detroit Life Insurance Co., 204 Mich. 357, 170 N. W. 35; Layton v. New York Life Insurance Co., 55 Cal. App. 202, 202 P. 958; Shaughnessy v. New York Life Insurance Co., 163 Minn. 134, 203 N. W. 600; Carlson v. Metropolitan Life Insurance Co., 221 Ill. App. 354; Ketcham v. American Mutual Accident Association, 117 Mich. 521, 76 N. W. 5; Gorman v. Metropolitan Life Insurance Co., 158 App. Div. 682, 143 N. Y. S. 1063; Emery v. New York Life Insurance Co., 316 Mo. 1292, 295 S. W. 571, and Ayers v. Busi-

ness Men's Insurance Co., 148 S. C. 355, 146 S. E. 147.

The Pennsylvania case of Evans v. Metropolitan Life Insurance Co., 294 Pa. 406, 144 A. 294, is not in point, as the insured committed no fraud in that case.

The undisputed testimony shows that the insured made the representations charged; that they were false; that the insured knew they were false; that defendant, relying thereon, executed the policy, and that the insured kept the policy with the false representations therein, from the date of issue until the date of his death, a period approximately fourteen months. The statement of the Supreme Court, in the case of Mutual Life Insurance Co. v. Hilton-Green, 241 U. S. 613, 36 S. Ct. 676, 680, 60 L. Ed. 1202, is peculiarly applicable to the facts of this case, which are analogous. The statement is:

"The assured at the least consciously permitted an application containing material misrepresentations to be presented by subordinate agents to officers of the insurance company under circumstances which he knew negatived any probability that the actual facts would be revealed; and later he accepted policies which he must have understood were issued in reliance upon statements both false and material. He could claim nothing because of such information in the keeping of unfaithful subordinates. Moreover, the false representations accompanied and were essential parts of the policies finally accepted. He did not repudiate, and therefore adopted and approved, the representations upon which they were based. Beyond doubt an applicant for insurance should exercise toward the company the same good faith which may be rightly demanded of it. The relationship demands fair dealing by both parties.  *  *  *

"Considered with proper understanding of the law, there is no evidence to support a verdict against petitioner, and the trial court should have directed one in its favor."

The undisputed evidence further shows that, after the insured told the soliciting agent the true facts concerning diet, jaundice, treatment, etc., the agent filled out the application for insurance in the home of the insured; that the insured signed the same; that the agent made a report to his company concerning the health of the insured and other matters material to the risk without in any way referring to the facts which were misrepresented; that the agent accompanied the insured to the medical examiner where the false representations were made. The facts of this case bring it within the exception to the general rule imputing knowledge of the agent to his principal.

The motion for a new trial is granted.